STATE, Respondent, v. CHIPPEWA CABLE COMPANY, INC., Appellant.

*October 31—November 26, 1963.*

For the appellant there was a brief by *Wiley & Devine* of Chippewa Falls, and oral argument by *W. Thomas Devine.*

For the respondent the cause was argued by *George B. Schwahn,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

FAIRCHILD, J. 1. *The statutes involved.* Sec. 114.30, Stats., provides for a state aeronautics commission. Its orders are subject to review under ch. 227, Stats.[2] Sec. 114.135 is entitled "Airport protection." The preamble declares that it is in the public interest that the navigable airspace over the state and the aerial approaches to any airport be maintained in a condition best suited for the safe operation of aircraft and to that end the height of any structure and the use of land may be regulated.

Sec. 114.135 (6), Stats., forbids the erection of a tower the height of which exceeds the limitations set forth in sub. (7) without first filing an application and procuring a permit from the state aeronautics commission. A rule of the commission specifies the information to be included in the application and provides that upon receipt of an application and after such investigation as the commission deems neces-

---

[2] Sec. 114.315, Stats.

sary, the commission will either grant such permit with such conditions as it deems necessary for the safe operation of aircraft or notify the applicant of a time and place for hearing.[3]

The height limitation in sec. 114.135 (7), Stats., controlling in this case is "500 feet above the ground or surface of the water within one mile of the location of the object, . . ."

2. *The demurrer to the first defense.* The first defense consists only of an allegation that subs. (6) and (7) of sec. 114.135, Stats., deprive defendant of its property without due process of law and deny equal protection of the law, in violation of both federal and state constitutional provisions.

The type of issue presented by an allegation that a statute violates the constitution, and a denial thereof or demurrer thereto, does not fit exactly into the usual classification of issues as fact or law. Primarily, it is an issue of law,[4] but because of principles controlling judicial review of legislative acts, the issue often is: Whether there may be reasonably conceived in the mind of the court facts which the legislature could have deemed to exist and which would form a reasonable basis upon which the statute may constitutionally rest.[5]

The process of judicial notice may be adequate to resolve the question under some circumstances, but particularly where economic regulation is involved, it may be necessary for a court to make a judicial investigation of facts outside the ordinary scope of judicial notice.

---

[3] 1 Wis. Adm. Code, sec. Aer 3.01.

[4] A demurrer does not admit the truth of an allegation of unconstitutionality. *Ritholz v. Johnson* (1944), 244 Wis. 494, 498, 12 N. W. (2d) 738.

[5] *State ex rel. Carnation Milk Products Co. v. Emery* (1922), 178 Wis. 147, 160, 189 N. W. 564; *A B C Auto Sales, Inc., v. Marcus* (1949), 255 Wis. 325, 330, 331, 38 N. W. (2d) 708.

Thus in *Ritholz v. Johnson, supra,* a complaint alleged that a statute prohibiting a certain type of advertising was invalid, and sought to enjoin enforcement. Defendants demurred. This court held the demurrer had been properly overruled, but solely on the ground that the court had no knowledge of the facts relating to the business being regulated, nor any satisfactory method of informing itself through encyclopedias and the like. It was decided that defendants should answer, alleging facts which might warrant enactment of the statute, and the trial court should make a judicial investigation of any disputed facts.

In *White House Milk Co. v. Reynolds* [6] the complaint alleged that a statute pertaining to pricing of dairy products deprived plaintiff of property without due process and denied equal protection of the laws. The attorney general demurred. We required that the procedure in *Ritholz* be followed.

*State v. Texaco* [7] was an action to enforce an administrative rule relating to unfair competition. Defendant demurred, and argued that the rule could not be applied to it because in conflict with a federal statute. We held that the claim of conflict could not be determined without facts beyond judicial notice, and that an answer would be required so that the relevant facts could be investigated.

It is clear, however, that where judicial notice can be taken of facts sufficient to form a reasonable basis upon which the statute may constitutionally rest, the assembling of further facts by way of trial could serve no useful purpose, and the *Ritholz* procedure need not be followed. [8]

Defendant in the case before us urges that the *Ritholz* procedure be followed. We consider it unnecessary.

[6] (1960), 12 Wis. (2d) 143, 106 N. W. (2d) 441.

[7] (1961), 14 Wis. (2d) 625, 111 N. W. (2d) 918.

[8] *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. (2d) 447, 474, 109 N. W. (2d) 271.

It is clear that the public safety is involved in protecting navigable airspace, and that regulation of the height of structures is appropriate for that purpose. We need not consider whether an inflexible prohibition of structures extending more than 500 feet above the ground or surface of the water within a mile would take property without due process or deny equal protection. The statute before us does not wholly prohibit higher structures but leaves to administrative determination, subject to judicial review, the question whether particular structures of greater height are permissible. The administrative rule provides for a hearing unless the permit be granted upon *ex parte* investigation by the commission.

The purpose of the statute is clearly legitimate, and judicial review sufficiently assures due process and equal protection in its administration.

The demurrer was properly sustained.

3. *The demurrer to the second defense.* The second defense consists of allegations that sec. 114.135, Stats., is void because it requires defendant to answer for an alleged criminal offense without due process of law and deprives it of the right to obtain justice freely and conformably to the laws.[9] For reasons similar to those already stated, we find no merit in this defense.

4. *The demurrer to the third defense.* Defendant alleged that subs. (6) and (7) of sec. 114.135, Stats., are so vague and indefinite that it is impossible to determine in advance whether or not a certain act will constitute a violation of these sections. Presumably this defense was intended to raise a due-process question, although no constitutional provisions were referred to.

---

[9] Sec. 114.27, Stats., provides a penalty and sec. 114.135 (10) provides that each day that a person violates sec. 114.135 (6) may be considered a separate violation.

When the case was here before, on demurrer to the complaint, defendant argued that for the purpose of the height limitation prescribed in sub. (7) of sec. 114.135, Stats., the 500 feet must be measured from the elevation of the highest point on the surface of the ground or water within one mile of the tower. Because the tower allegedly rises 400 feet above the ground at its base, it would then follow that it did not rise higher than 500 feet above the elevation of the highest point. Defendant argued for strict construction in its favor because the statute is in derogation of common law and is penal.

The state contended that the 500 feet must be measured from the elevation of the lowest point within a mile. Its argument was that the statute should be liberally construed to achieve its remedial purpose and that the construction for which it contended would be more nearly consistent with the concept of navigable airspace as defined in federal laws and regulations.[10]

We rejected the construction contended for by defendant (500 feet above elevation of highest point within one mile). It was not necessary, however, in order to resolve the issue on demurrer, to adopt conclusively the construction advocated by the state (500 feet above elevation of lowest point within one mile). Although, if we relied only on the words of the statute in the light of its apparent purpose, we would agree with the state's conclusion, it seemed conceivable that the interpretation might be affected by facts not yet before us. Such facts might conceivably be (as illustrations only) proof of past uniform administrative practice or expert testimony as to principles or accepted techniques in topographical surveying.

[10] 49 USCA, p. 30, sec. 1301 (24), p. 41, sec. 1304; 14 C.F.R., sec. 60.17 (a)-(c).

Therefore, we said:

"Whether proper construction of the statute requires the measurement of 500 feet to begin at the lowest point in the area or at the average of ground level in the area may depend on facts not now before the court." [11]

The existence of a degree of ambiguity in the language of the statute, however, does not establish that it is so vague that enforcement of it violates due-process requirements. "If, by the ordinary process of construction, a practical or sensible meaning may be given to the act, it is not void for uncertainty." [12]

Unless facts appearing upon the trial show a good reason for construing the statute to require the 500 feet to be measured from an average elevation, it will necessarily follow that it must be measured from the elevation of the lowest point within a mile. In either case the meaning will have been determined by resort to the ordinary rules of construction.

The demurrer was properly sustained.

5. *The demurrer to the fifth defense.* The complaint alleged that on August 26, 1960, defendant applied to the commission for a permit to erect its tower to a height of 400 feet above the ground at its base and that on October 20, 1960, the director of the commission informed defendant that its tower (which had already been erected) was a hazard to the safe operation of aircraft, and a permit would not be issued. In the fifth defense it is alleged that the commission has never notified defendant of a hearing upon its application as required by the commission's rule.

It should also be noted that the complaint alleges that the tower is in fact a hazard to the safe operation of aircraft and has been found by the federal aviation agency to be ob-

---

[11] *State v. Chippewa Cable Co., supra,* p. 304, footnote 1.
[12] *State v. Arnold* (1935), 217 Wis. 340, 345, 258 N. W. 843.

jectionable to aviation interests. These allegations are denied in the answer. The complaint does not allege the number of feet by which the tower exceeds the height which would have been lawful without a permit. Thus the degree as well as the existence of the violation is still at issue.

This action was commenced promptly, on November 14, 1960, and the failure to hold a hearing on the application by that date is not surprising. The answer, however, was not served until June 17, 1962. The rule [13] contemplates that there shall not be a final denial of an application without a hearing, and the statute provides for judicial review.[14] It seems to us that the commission should have held its hearing long before the answer was served. If, upon hearing, the commission had determined that the permit should issue, that fact would not have excused past violations, for which defendant would remain liable for criminal penalties, but would have obviated need for injunctive relief. Had the commission decided, after hearing, to deny the application, the state would have had better standing to seek equitable relief than it does after long delay.

This is a civil action to enjoin a continuing violation as a public nuisance.[15] We think that unless the proof at the trial shows that the tower is, by reason of exceeding the height allowable without a permit, so substantial a hazard to air traffic that the application was foredoomed to denial at a hearing, the failure of the commission to hold a hearing might, in the discretion of the court, deprive the state of equitable relief.

---

[13] *Supra,* footnote 3.

[14] Sec. 114.315, Stats.

[15] *State ex rel. Attorney General v. Thekan* (1924), 184 Wis. 42, 46, 198 N. W. 729; *State ex rel. Cowie v. La Crosse Theaters Co.* (1939), 232 Wis. 153, 160, 161, 286 N. W. 707; *State ex rel. Abbott v. House of Vision* (1951), 259 Wis. 87, 47 N. W. (2d) 321; *State v. Texaco, supra,* footnote 7.

Accordingly the fifth defense should remain unresolved until final determination of the action and the demurrer should have been overruled.

6. *The demurrer to the sixth defense.* Defendant alleges that on August 10, 1960, it notified the commission of its intent to construct the tower. On the 12th, the commission informed defendant the location was erroneous, and on the 13th defendant furnished a correct description of the site. On August 24th the commission informed defendant it would be necessary to obtain a permit and on August 26th defendant applied. The tower had been completed. On September 19th a commission employee told defendant he could see no problem in issuing the permit. On the 28th the commission informed defendant the tower violated the statute. Defendant alleges that because of these events, the state is guilty of laches and is estopped to assert that the tower is illegal.

We have held that the doctrine of laches is not applicable to an action by the state to protect a public right.[16]

We have held that estoppel cannot be invoked against the state industrial commission to prevent enforcement of an order issued to protect public safety. We said:

"There are certain situations in which estoppel should not be permitted to be invoked against a government, or one of its agencies. Strong reasons of public policy exist why estoppel should not be invoked against the government, or an agency of government, when it is sought to exercise the police power for the protection of the public health, safety, or general welfare."[17]

It appears from the allegations made by defendant that at most two weeks elapsed from the day on which notice was

[16] *State v. Josefsberg* (1957), 275 Wis. 142, 155, 81 N. W. (2d) 735.

[17] *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. (2d) 78, 87, 100 N. W. (2d) 571. See concurring opinion in *Schober v. Milwaukee* (1963), 18 Wis. (2d) 591, 596, 597, 119 N. W. (2d) 316.

given the commission until the tower was built, and that the alleged favorable statement of the commission employee was made after the tower had been completed. The action was begun November 14th. The defendant did not, and could not reasonably, claim that it changed its position in reliance on the silence of the commission, the statement of its employee, or delay in bringing the action, even if laches or estoppel could apply.

There is no merit to the sixth defense.

*7. The order denying interpleader.* Defendant's answers set forth a cross complaint against the state aeronautics commission and another against the director of the commission. Defendant moved that they be brought in as additional parties. The circuit court denied the application.

An order denying an application to bring additional parties into the action is not, as to one who is already a party, an appealable order. He will have an opportunity to review it, if he desires, upon appeal from the judgment.[18]

The present appeal must be dismissed.

*8. The order striking the fourth defense.* Defendant alleged as a fourth defense that the tower was constructed in compliance with the ordinances of the town of Tilden, in which it is located; that there is conflicting jurisdiction between the town and the commission; that the commission has failed to proceed as required by sec. 114.135 (9), Stats., to resolve a conflict of jurisdiction by overruling the local rules and regulations.

Plaintiff demurred, but the court neither sustained nor overruled the demurrer. At the time of oral argument before the circuit court, plaintiff offered affidavits to show that there were no ordinances or permits relating to the matter adopted or issued by the town of Tilden. On the basis of

---

[18] *Brody v. Long* (1961), 13 Wis. (2d) 288, 292, 108 N. W. (2d) 662.

such affidavits, plaintiff moved to strike the fourth defense as sham or frivolous, and the court granted the motion.

Both parties take the position that this order is appealable. Nevertheless, we must dismiss the appeal on our own motion if the order is not appealable.[19] Although under some circumstances we have jurisdiction under sec. 274.11 (4), Stats., to review an appealable order or judgment not mentioned in the notice of appeal where a party has attempted to appeal from a nonappealable order covering the same issue,[20] that is not the situation here, and our jurisdiction depends upon the appealability of the order appealed from.

An order granting or denying a motion to strike a defense[21] is not among the orders listed as appealable in sec. 274.33, Stats. Sec. 274.33 (3) does authorize an appeal from an order which sustains or overrules a demurrer, and it has been recognized that where a motion to strike challenges the legal sufficiency of the facts set out as a defense it is "in legal effect not a motion to strike but a demurrer to a separate defense."[22] Orders granting or denying a motion *of that type* have been held to be orders sustaining or overruling a demurrer and therefore appealable.[23] Other cases have held that a particular motion to strike was not the equivalent of a

[19] *Yaeger v. Fenske* (1962), 15 Wis. (2d) 572, 573, 113 N. W. (2d) 411.

[20] See *Baumgarten v. Jones,* ante, 467, 124 N. W. (2d) 609, decided November 26, 1963.

[21] Secs. 263.42 and 263.44, Stats.

[22] *Wisconsin Face & Fire Brick Co. v. Southern Surety Co.* (1925), 188 Wis. 383, 387, 206 N. W. 204.

[23] *Williams v. Journal Co.* (1933), 211 Wis. 362, 364, 365, 247 N. W. 435; *Fleischmann v. Reynolds* (1934), 216 Wis. 117, 118, 256 N. W. 778; *Slama v. Dehmel* (1934), 216 Wis. 224, 229, 257 N. W. 163; *Teegarden Co-operative Cheese Co. v. Heckman* (1955), 271 Wis. 86, 89, 72 N. W. (2d) 920; *Lounsbury v. Eberlein* (1957), 2 Wis. (2d) 112, 117, 86 N. W. (2d) 12; *Albrent v. Spencer* (1958), 3 Wis. (2d) 273, 275, 88 N. W. (2d) 333.

demurrer, and accordingly an order granting it was not appealable.[24]

Although the language in the decisions may not have been consistent in every instance, we now hold that a motion to strike an answer or reply, or a portion thereof, as sham, frivolous, or irrelevant, is the equivalent of a demurrer only when all the following propositions are true: (1) The motion is to strike the entire answer or reply, or the whole of one or more defenses separately stated therein. (2) The motion accepts as true for the purpose of the motion all the allegations of fact in the defense attacked and the motion is not supported by affidavits tending to establish facts different from or in addition to those alleged. (3) The only issue raised by the motion is the issue of law, whether the defense attacked states a defense. If a motion to strike fulfils all the foregoing propositions it is the equivalent of a demurrer even though it is not labeled a demurrer and does not expressly specify that the defense attacked does not state a defense.

---

[24] *Gilbert v. Hoard* (1930), 201 Wis. 572, 230 N. W. 720: A motion to strike part of an answer not pleaded as a separate defense is not the equivalent of a demurrer. *Williams v. Journal Co., supra,* p. 366, footnote 23. *First Wisconsin Nat. Bank v. Carpenter* (1935), 218 Wis. 30, 32, 259 N. W. 836: This decision held that a motion to strike is not the equivalent of a demurrer unless it appears on its face to be based upon a statutory ground for demurrer. This requirement has not been stated in any other decision coming to our attention. *Paraffine Companies v. Kipp* (1935), 219 Wis. 419, 421, 263 N. W. 84; *Bolick v. Gallagher* (1954), 266 Wis. 208, 210, 63 N. W. (2d) 93; *Blooming Grove v. Madison* (1958), 5 Wis. (2d) 73, 75, 92 N. W. (2d) 224: Here the court indicated it would apply the instant exception to a motion to strike an entire complaint or an entire cause of action, but held that the motion went only to a portion. *Britz v. Chilsen* (1956), 273 Wis. 392, 78 N. W. (2d) 896: Here also the motion attacked a portion of a cause of action. *Stafford v. General Supply Co.* (1958), 5 Wis. (2d) 137, 141, 92 N. W. (2d) 267: Here the motion involved a counterclaim rather than defensive matter. We held that a motion to strike which, by affidavit, brought in matters outside the pleadings is not the equivalent of a demurrer.

Where a motion to strike is the equivalent of a demurrer as just defined, it is subject to the other rules governing demurrer, *e.g.*, that there shall be but a single demurrer to the answer, and that it may be served, as of right, within twenty days after service of the pleading attacked,[25] and an order granting or denying the motion is appealable as an order sustaining or overruling a demurrer.

The only purpose of recognizing a motion to strike as the equivalent of a demurrer is to put substance above form where a party through mistake or design has used a motion to strike in place of a demurrer in order to challenge the legal sufficiency of the facts set out as a defense. Clearly it would be good practice for the trial court, when presented with a motion of this type, to make it clear to the parties and in its order that the motion was treated as a demurrer.

The motion to strike now under consideration was based upon affidavits which contradicted allegations in the defense attacked. The allegations in the fourth defense implied that the town of Tilden had exercised power to regulate the height of structures by adopting ordinances with which defendant complied and which were in conflict with the provisions the state is seeking to enforce and which had not been properly overruled. The affidavits show that no such ordinances are in existence. The circuit court did not treat the motion as a demurrer and the order recites that the court examined the affidavits.

We conclude that the motion to strike was not in legal effect a demurrer and that the order granting it is not appealable.

*By the Court.*—That part of one order which sustained demurrers to the first, second, third, and sixth defenses is affirmed. That part which sustained a demurrer to the fifth defense is reversed. The appeal from the orders granting the motion to strike and denying interpleader is dismissed.

---

[25] Secs. *263.17* and *263.22*, Stats.