SUNDSETH, and another, Respondents, v. ROADMASTER BODY CORPORATION, and others, Appellants.

*No. 75–98. Argued September 7, 1976.—Decided October 5, 1976.*
(Also reported in 245 N. W. 2d 919.)

For the appellants there was a brief by *Mark L. Korb* and *Campbell, Brennan, Steil & Ryan, S. C.* of Janesville, and oral argument by *Mr. Korb*.

For the respondents there was a brief by *Roger J. Mueller* and *Hamilton & Mueller* of Dodgeville, and oral argument by *Roger J. Mueller*.

DAY, J.    This is an appeal from orders striking portions of affirmative defenses in defendants' answer and sustaining demurrers to certain counterclaims made in response to plaintiffs' complaint.

The principal questions are:

First, are the individual defendants L. B. Miller and Richard C. Entwistle principal obligors on the note or merely guarantors. The trial court found the individual defendants to be guarantors.

Second, can an individual guarantor of a corporate indebtedness interpose the defense of usury when the principal obligor cannot? The court held the defense not

available to individual guarantors. We agree with the trial court on both issues. Other issues will be discussed in the opinion.

Under date of June 6, 1974 the plaintiffs Kenneth R. Sundseth and Gilbert D. Sedor entered into an agreement with the defendants Roadmaster Body Corporation (hereinafter Roadmaster) and L. B. Miller and Richard C. Entwistle, which was incorporated in plaintiffs' complaint and which provided among other things that:

"Whereas, said Roadmaster . . . is desirous of borrowing $25,000 from Kenneth R. Sundseth and Gilbert D. Sedor; and . . . L. B. Miller . . . and Richard C. Entwistle are agreeable to personally guarantee the promissory note of the corporation and join in the same individually . . . and Sundseth and . . . Sedor are willing to loan said money to said Roadmaster . . . guaranteed by said Miller and Entwistle . . . Sundseth and Sedor shall make available to the corporation on or before June 14, 1974, the sum of $25,000, made payable to Roadmaster . . . and L. B. Miller and Richard C. Entwistle . . . (who) shall execute a promissory note in the amount of $25,000 to said Sundseth and Sedor on behalf of said Roadmaster . . . as its president and vice president . . . and shall also join with their wives in executing the said note individually, to guarantee the payment thereof and the terms of this Agreement. . . . Roadmaster on July 6, 1974 shall pay to said Sedor the sum of $1,000 to be applied on the loan . . . and shall continue to make a monthly payment in said amount to said Sedor until the entire loan . . . including principal and interest has been fully paid and satisfied. . . . (I)n addition . . . Roadmaster . . . shall pay to said Sundseth and Sedor an additional $1,000 ($500 each) so that $2,000 would be owing on that date and each month thereafter until the loan . . . is paid in full . . . and thereafter (payments) shall revert to $1,000 per month. . . . (M)onthly payments to Sedor and Sundseth shall continue until a total of seventy eight (78) payments have been made ($78,-000). . . ."

Pursuant to the agreement, Roadmaster, and Messrs. Miller and Entwistle individually and Barbara Entwistle

executed a promissory note payable to the plaintiffs for $25,000 plus interest at ten and one-half percent. The note bore the date of June 6, 1974 and states "Terms of payment in accord of (sic) agreement of even date." When default occurred after payment of only $1,000, plaintiffs brought action against Roadmaster and Messrs. Miller and Entwistle to collect $24,946.96 alleged to be due as principal and interest.

The defendants' answer included affirmative defenses and counterclaims.

The trial court granted a motion to strike as irrelevant paragraphs 12 and 13 of defendants' answer which set up an affirmative defense of usury alleging that the agreement violated section 138.05(1)(a) Stats.[1] The trial court ruled that the individual defendants were guarantors rather than co-obligors of the note by the corporation. The trial court further held that the individuals, as guarantors, could not set up the defense of usury because the corporation, as primary obligor, was exempted from the protection of the usury statute by Section 138.05 (5) Stats.[2] The individual defendants argue that the agreement is ambiguous and that other documents in the record raise a triable issue of fact as to whether they were co-obligors or guarantors. Alternatively, they argue that they may invoke the usury defense even if they are deemed to be guarantors. We disagree on both points.

The agreement dated June 6, 1974 is not ambiguous as to the role of the individual defendants. The note for

[1] "138.05 *Maximum rate; prepayment, disclosure; corporations.*

"(1) Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than:

"(a) At the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance; . . ."

[2] (5) This section shall not apply to loans to corporations except loans made by licensees under s. 138.09.

$25,000 says that the terms of repayment are in accordance with the agreement of June 6th. We find nothing ambiguous about the agreement or the note. This agreement details the understanding between the parties and we hold that it is clear that the individual defendants Miller and Entwistle are guarantors rather than co-obligors on the note.

■ ■ Ordinarily, whether parties are co-obligors or guarantors is a question of fact. *Mann v. Erie Manufacturing Co.* (1963) 19 Wis. 2d 455, 459, 120 N.W. 2d 711. *Mann* involved an alleged "guarantee" made orally. Here the evidence is in writing. It is undisputed that the documents which established the obligations of the parties are now before this court. The parties' dispute is over the meaning of those documents. The trial court found that the documents showed a contract of guarantee.

"It should be noted that a trial judge's interpretation of a contract poses only a question of law. . . ." *American Mut. Liability Ins. Co. v. Fisher.* (1973), 58 Wis. 2d 299, 304, 206 N.W. 2d 152.

The terms of the contract here were clear and unambiguous and posed a question of law as to its meaning. The trial court found it to be a contract of guarantee and we agree.

The question then arises whether the individual defendants as guarantors may plead usury when the corporation, as primary obligor, cannot. This issue has not been decided by this court. The majority rule is that a guarantor of a corporate obligation cannot raise usury as a defense if it is not available to the corporation. See generally, 63 ALR 2d sec. 12 p. 950; 91 C.J.S. *Usury* §132 d p. 728. *Salvin v. Myles Realty Co.* (1919), 227 N.Y. 51, 124 N.E. 94, 96. Accord: *Schneider v. Phelps* (N.Y. App. 1975), 50 App. Div. 2d 843, 377 N.Y.S. 2d 519, 520. *Micrea, Inc. v. Eureka Life. Ins. Co. of Amer.* (1976 Tex. App.), 534 S.W. 2d 348, 354, *Verson v. Hardt*

(1969), 107 Ill. App. 2d 480, 246 N.E. 2d 461; *All Purpose Finance Corp. v. D'Andrea* (1967), 427 Pa. 341, 235 A. 2d 808; *Dahmes v. Industrial Credit Co.* (1961), 261 Minn. 26, 110 N.W. 2d 484, 488.

This rule is generally referred to as the "New York Rule" and the theory is that the guarantor stands in no better position than the corporate primary obligor.

▆▆▆ In *Country Motors, Inc. v. Friendly Finance Corp.* (1961), 13 Wis. 2d 475, 478, 109 N.W. 2d 137, this court in upholding the Wisconsin Statute denying the usury defense to corporation said:

"Doubtless the Legislature considered that individuals in partnerships were generally more likely than corporations to yield to the pressures of necessity and agree to unwarranted rates of interest, and that corporations generally, when borrowing would have bargaining power more equal to that of lenders. The increased use of corporate organization for very small businesses in the present day may make the generalization less of a certainty than the Legislature supposed it to be in 1878. . . ." It may be that entrepreneurs who incorporate small businesses and personally guarantee loans to promote their businesses should enjoy the greater protection given to individuals under the usury statute. But that is a matter for the Legislature to determine. Usury laws are historically a legislative concern.[3]

The issue of usury could only arise if the individual defendants were found to be liable for the $78,000 in addition to the interest payments on the note. The note provides for 10 and one-half percent per annum which is under the twelve percent allowed by statute. The defendants in arguing that the usury law applies to them in effect argue that they are liable for the $78,000. The plaintiffs in their brief state: "There's nothing in the agreement dated June 6, 1974 to indicate that the in-

---

[3] *The Usury Laws of Wisconsin: A Study in Legal and Social History,* 1963 Wis. L. REV. 515.

dividual defendants are obligated whether as primary obligors or as guarantors on anything other than the promissory note for the amount of $25,000." However, this issue is not properly before this court because it was not decided below.

The court also ordered paragraphs 31 and 32 of the third cause of action of the defendants' counterclaims striken on the ground of irrelevancy. This third cause of action on the counterclaim was based on alleged wrongful attachment of the corporation's assets by the plaintiffs. Paragraphs 31 and 32 alleged that Mr. Sedor executed an individual surety bond contrary to Section 256.34 Stats.[4] to induce the issuance of the writ of attachment. The plaintiffs assert the order is not appealable. We agree. An order striking a portion of a pleading as irrelevant is not an appealable order. *Gauger v. Ludwig* (1972), 56 Wis. 2d 492, 495, 202 N.W. 2d 233. This order did not determine the action nor prevent a judgment from which an appeal could be taken. Therefore it is not appealable under Section 274.33(1) Stats. (1973).[5] For the same reason we do not treat the order as one sustaining demurrer. *See State v. Chippewa Cable Co.* (1963) 21 Wis. 2d 598, 611, 124 N.W. 2d 616. The court sustained demurrers to the defendants' first and second causes of action of the counterclaim on the ground that they failed to state causes of action. These claims were based on the usury statute and for reasons set forth

---

[4] "256.34 *Attorney not to be bail, etc.* No attorney practicing in this state shall be taken as bail or security on any undertaking, bond or recognizance in any action or proceeding, civil or criminal, nor shall any practicing attorney become surety on any bond or recognizance for any sheriff, constable, clerk of court or municipal justice."

[5] "274.33 *Appealable orders.* The following orders when made by the court may be appealed to the supreme court:

"(1) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken."

in the discussion above the usury defense was not available to the individual defendants. The court properly sustained the demurrers.

■ The plaintiffs demurred to the defendants' third and fourth causes of action of the counterclaim for damages for wrongful attachment on two grounds, first, failure to state a cause of action and second a defect in parties. The court rejected the first ground but sustained the demurrers on the basis that there was a defect of parties because Roadmaster had gone into bankruptcy and the trustee in bankruptcy was not named as a party. The parties agreed at the time of the oral argument that this issue is moot because the plaintiffs entered into a stipulation with the trustee in bankruptcy, which was approved by the bankruptcy court subsequent to the order entered below, wherein the corporation through the trustee in bankruptcy withdrew from all litigation and withdrew all claims against the plaintiffs or either of them. The issue on which the trial court sustained the demurrers to plaintiffs' third and fourth causes of action having become moot, the appeal from the orders sustaining the demurrer must be dismissed. However, since no appeal was taken from the orders denying the demurrers on the basis that no cause of action was stated, those causes of action remain.

That part of the order striking paragraphs numbered 12 and 13 of defendants' answer is affirmed. The appeal from that part of the order striking paragraphs thirty-one and thirty-two of defendants' third cause of action of the counterclaim is dismissed.

The order sustaining the demurrer to the first cause of action of defendants' counterclaim without right to replead is affirmed.

The order sustaining the demurrer to the second cause of action of defendants' counterclaim without right to replead is affirmed. The appeal from the orders sustain-

ing demurrers to the third and fourth causes of action of defendants' counterclaim is dismissed.

*By the Court.*—Appeal dismissed in part; Orders affirmed in part consistent with this opinion.

ABRAHAMSON, J., took no part.